[No. B145953. Second Dist., Div. Four. Oct. 24, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ROMAN RAMOS CRUZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Under California Rules of Court, rules 976(b) and 976.1, only part I of the Discussion is certified for publication.

COUNSEL

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth C. Byrne and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

EPSTEIN, J.—Roman Ramos Cruz appeals from conviction for forcible rape, forcible sodomy, and forcible penetration with a foreign object. He claims that the misadministration of the jury oath rendered the verdict reversible per se. In the published portion of this opinion, we find no reversible error with respect to this issue. He also claims that the trial court erred in failing to instruct the jury sua sponte regarding voluntary intoxication. In the unpublished portion of this opinion, we find no reversible error on this issue. We affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

Emma P. is a professor and doctoral student at the University of Guadalajara. Early in August 1999, she was in Los Angeles doing research on immigrants from Auguascalientes, Mexico. She was staying in a hotel in the City of Lawndale, along with fellow researchers.

Around midnight on the evening of August 5-6, Ms. P. decided to leave her hotel room to get a soft drink from the hotel vending machine, but could not get the machine to accept the dollar bill she was using. She left the hotel to buy the drink at a nearby gas station. Once there, she bought a soft drink and also asked for a beer. Because of the hour, the attendant was unable to sell beer. The attendant directed her to a nearby bar, the Picadilly.

At the bar, Ms. P. asked for a beer, but because she spoke very little English and the bartender spoke very little Spanish, they were unable to communicate. Defendant, a regular patron at the bar, was called over to translate. He had been at the Picadilly that evening, drinking beer, from 8:00 p.m.

Defendant and Ms. P. talked at the Picadilly for one to one and one-half hours and had two beers together. Defendant told Ms. P. that he knew a person from Aguascalientes and that he would be able to give Ms. P. this person's telephone number the next day. Defendant and Ms. P. left the bar together, defendant telling Ms. P. that he would walk her to her hotel because the area was dangerous. Once outside, he directed Ms. P. to a poorly lit area in the rear of a parking lot next to the bar. Defendant said that they were going to that area so he could point out his apartment building to Ms. P., who planned to go there later to get the telephone number of the person from Aguascalientes. Defendant also suggested walking through the back of the parking lot to avoid suspicion because Ms. P. was carrying a bag with the soft drink she had purchased, which he said the police could have mistaken for a beer.

Defendant and Ms. P. sat on a curb in the parking lot and talked for a while. At some point, he started making sexual advances towards her. When she rejected them and tried to walk away, he started sexually assaulting her. In the course of the assault, he penetrated her vagina with his fingers and his penis, and he penetrated her rectum with his penis.

When defendant released Ms. P., she tried to call a friend in Mexico from a public telephone but could not remember the number. She then returned to the hotel, showered, and woke her roommate, who had been asleep. The roommate, who spoke both Spanish and English, then called a rape crisis hot line and the police.

The bartender at the Picadilly identified defendant as a suspect in the assault, and defendant eventually admitted the offenses. Defendant was arrested and charged with one count each of forcible rape (Pen. Code, § 261, subd. (a)(2)), forcible sodomy (Pen. Code, § 286, subd. (c)(2)), and forcible penetration with a foreign object (Pen. Code, § 289, subd. (a)(1)). The

information also sought an enhanced sentence on the rape and foreign object counts due to infliction of great bodily injury, pursuant to Penal Code sections 667.61, subdivision (b) and 12022.8.

Defendant pleaded not guilty. The trial court dismissed the two enhancements, one at the People's request and one on motion by the defendant. After a jury trial, defendant was convicted of all three counts. He was sentenced to serve six years in prison on the rape count, with consecutive two-year sentences on the remaining counts, for a total of 10 years. He filed a timely appeal.

## DISCUSSION

### I

■ Defendant argues that the conviction must be reversed because the jury was sworn incorrectly. After a jury is selected, the trial court is required to administer an oath in which the jurors agree to "well and truly try the cause now pending before this court, and a true verdict render according only to the evidence presented to you *and to the instructions of the court.*" (Code Civ. Proc., § 232, subd. (b), italics added.) Here, the oath was incorrectly administered, in that the jury explicitly agreed only to "well and truly try the cause now pending before this court and a true verdict render only according to the evidence presented to you by this court." The oath did not ask the jurors to agree to follow the instructions of the court.

The division of labor between trial court and jury has long been established throughout the United States: the jurors decide the facts and the court instructs them on the law. In *Sparf and Hansen v. United States* (1895) 156 U.S. 51 [15 S.Ct. 273, 39 L.Ed. 343], the United States Supreme Court addressed this issue. The court surveyed the state of the law in both federal and state courts, finding consistent application of this principle. (*Id.* at pp. 64-86 [15 S.Ct. at pp. 278-287].) The court concluded: "We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." (*Id.* p. 102 [15 S.Ct. at p. 293].)

This principle is codified in Penal Code section 1126, which states that the jury is "bound, nevertheless, to receive as law what is laid down as such by the court." The duty of the jury to follow the court's instruction as to the law predated this legislative statement. In *People v. Anderson* (1872) 44 Cal. 65, decided the same year Penal Code section 1126 was enacted, the court held: "In this State, it is so well settled as no longer to be open to debate that it is

the duty of the jury in a criminal case to take the law from the Court." (*Anderson,* at p. 70.) More recently, our Supreme Court has reaffirmed "the basic rule that jurors are required to determine the facts and render a verdict in accordance with the court's instructions on the law." (*People v. Williams* (2001) 25 Cal.4th 441, 463 [106 Cal.Rptr.2d 295, 21 P.3d 1209]; *In re Stankewitz* (1985) 40 Cal.3d 391, 399 [220 Cal.Rptr. 382, 708 P.2d 1260], quoting *Noll v. Lee* (1963) 221 Cal.App.2d 81, 87 [34 Cal.Rptr. 223] [jurors are " 'bound by the law as given them by the court' "].)

The practice of the jury receiving the law from the court is so ingrained that prior to 1988, the Legislature did not find it necessary to include a promise in the jury oath to follow the court's instructions. The statutory terms of the previous oath, enacted in 1872 and similar to the oath administered here, required only that the jury "well and truly try the matter in issue . . . and a true verdict render according to the evidence." (See Cal. Code (1872) former Code Civ. Proc., § 604, p. 157, repealed by Stats. 1988, ch. 1245, § 7, p. 4155.) No intent is evident from the legislative history of the Trial Jury Selection and Management Act, which repealed the prior oath and enacted the current one, to overturn the judicial and legislative pronouncements that jurors have a duty to follow the instructions of the court.

The jury in this case was not unmindful of its duty. Though the jurors were not expressly asked to acknowledge an agreement to render a verdict according to the instructions of the trial court, they were told that this was their duty. The jurors were instructed, "You must apply the law as I state it to you to the facts as you determine them to be and in this way arrive at your verdict. You must accept and follow the law as I state it to you whether or not you agree with the law. If anything concerning the law said by the attorneys during trial or arguments conflicts with my instructions, you must follow my instructions."

Defendant contends that it is specious to rely on the trial court's instructions to the jury as a basis to conclude the jurors followed the law, unless they explicitly agreed to follow the instructions. Absent a separate duty to follow the court's instructions, this argument might have some plausibility. But, as we have seen, statutory and case law establishes a duty independent of the jury oath. The court's instructions served merely to remind the jury of this duty, as would the oath if properly administered.

Even if the jury did not expressly agree to perform a duty, we must presume that an official duty has been performed. (Evid. Code, § 664; see *United States v. Schneiderman* (S.D.Cal. 1952) 106 F.Supp. 906, 926 [characterizing jury deliberations as "official duties"].) Specifically, we presume that the jury "meticulously followed the instructions given." (*People v. McNear* (1961) 190 Cal.App.2d 541, 547 [12 Cal.Rptr. 124].)

The presumption that an official duty has been performed is a presumption affecting the burden of proof. (Evid. Code, § 660.) "The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.) Defendant, arguing only that failure to instruct the jury properly is structural error requiring automatic reversal, makes no showing that the jury did not perform its duty of following the law as laid down by the trial court. Therefore, the presumption holds that the jury followed the trial court's instructions.

A similar situation arose in *People v. Lewis* (2001) 25 Cal.4th 610 [106 Cal.Rptr.2d 629, 22 P.3d 392]. There, the jury oath to not commit perjury during voir dire, also in Code of Civil Procedure section 232, was not administered before the jurors answered a written questionnaire. The court placed the burden of proof on defendant to show that this failure prejudiced him. (*Lewis,* at p. 630.) As in *Lewis,* the burden should be on defendant to show prejudice from failure to swear the jury properly. This is especially applicable here because, while perjury requires an oath, the duty to follow the court's instructions does not. (Pen. Code, § 118, subd. (a).) Because defendant has made no showing of prejudice flowing from the failure of the court to administer the current statutory oath, and because we must presume that the jury followed the court's instructions, we find no reversible error in the misadministration of the jury oath.

II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

The judgment of conviction is affirmed.

Vogel (C. S.), P. J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2002.

---

*See footnote, *ante*, page 69.