Filed 5/7/15  P. v. Schofield CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>MARK D. SCHOFIELD,<br><br>　　　　Defendant and Appellant. | A140967<br><br>(San Mateo County<br>　Super. Ct. No. SC079191) |

　　　　Appellant Mark D. Schofield appeals from the judgment entered after a jury convicted him of seven offenses, including two counts of felony evading arrest by motor vehicle, felony carrying a concealed dagger or dirk, two counts of felony possession of methamphetamine, and misdemeanor driving with a suspended license. After finding true certain enhancement allegations in a bifurcated proceeding, the trial court sentenced appellant to a total term of seven years and eight months for the felony counts.  In addition, the court sentenced appellant to 180 days for count seven, misdemeanor possession of drug paraphernalia, and 72 days, to be served consecutively, on count three, misdemeanor driving with a suspended license.  The misdemeanor terms were then deemed served based upon appellant's presentence time in custody.  We order the trial court to modify the abstract of judgment to stay the sentence for count three pursuant to Penal Code section 654 and, in all other respects, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

　　　　On October 9, 2013, an information was filed charging appellant with the following seven crimes occurring on three separate dates:  felony evading arrest by motor

1

vehicle on May 2, 2013 (Veh. Code § 2800.2) (count one); felony carrying a concealed dagger or dirk on May 2, 2013 (Pen. Code, § 21310)[1] (count two); misdemeanor driving with a suspended license on May 2, 2013 (Veh. Code, § 14601.1, subd. (a)) (count three); felony possession of methamphetamine on August 23, 2013 (Health & Saf. Code, § 11377, subd. (a)) (count four); felony evading arrest by motor vehicle on September 14, 2013 (Veh. Code § 2800.2) (count five); felony possession of methamphetamine on September 14, 2013 (Health & Saf. Code, § 11377, subd. (a)) (count six); and misdemeanor possession of drug paraphernalia on September 14, 2013 (Health & Saf. Code, § 11364.1) (count seven).

In addition, the information alleged the following enhancements: an on-bail enhancement with respect to count five (§ 12022.1); enhancements for multiple prior felony convictions (§ 1203, subd. (e)(4)); and one prior "Strike" offense within the meaning of section 1170.12.

A jury trial began on November 19, 2013, at which the following evidence was heard.

At approximately 4:30 p.m. on May 2, 2013 in Daly City, Police Officer Lucas Taylor observed appellant driving a motorcycle with a woman as his passenger that had a bent license plate. Officer Taylor turned around and activated his vehicle's emergency lights to initiate a traffic stop pursuant to Vehicle Code section 5201, which requires vehicles to have clearly visible, well-maintained license plates. At that point, appellant turned toward the officer, made eye contact, and then accelerated his motorcycle before taking off. Officer Taylor, having identified appellant, then activated his vehicle's siren to give chase. Appellant, however, did not stop, but proceeded to drive through a residential area at a relatively high speed, running numerous stop signs and lights, and passing several cars on the wrong side of the road.

---

[1]     Unless otherwise stated, all further statutory references herein are to the Penal Code.

2

Officer Taylor eventually lost sight of appellant, but then came across him again. At this point, appellant was on foot, attempting to pick his motorcycle up off the ground. Officer Taylor determined that appellant had crashed his motorcycle into a car just as a woman with a stroller-bound child was attempting to cross the street. Officer Taylor also saw appellant's female passenger attempting to flee before hiding behind a nearby retaining wall. This female was later found behind the retaining wall by Officer Lilian Tashiro.

As Officer Taylor approached, appellant attempted to flee again, but Officer Taylor was able to stop him by using the collision bar on the front of his police vehicle to knock the motorcycle out of appellant's hands. Officer Taylor then exited his vehicle and ordered appellant to the ground. Appellant initially disobeyed, but then complied once Officer Taylor threatened to release his police dog, Odie. A subsequent search of appellant's person incident to arrest revealed he was carrying a concealed switchblade knife in his pocket.

On August 23, 2013, Officer Taylor Johnson lawfully searched appellant's person and residence and found a small plastic bag with 1.90 grams of methamphetamine. Prior to being arrested for possession, appellant told the officer that this bag of methamphetamine was "trash."

In the late evening of September 14, 2013, Officer Gary Thompson observed appellant driving a motorcycle with a woman as his passenger that had a bent license plate. Officer Thompson activated his vehicle's overhead lights to initiate a traffic stop, but appellant ran a stop sign and took off. Appellant then ran several other stops signs on his motorcycle in his attempt to evade Officer Thompson.

Officer Thompson ultimately ended his chase when he struck another vehicle; however, he was able to record the motorcycle's license number before losing sight of it. Officer Thompson did not immediately identify appellant as the motorcycle driver; however, after he reported the details of this incident, including reporting to Officer Taylor the fact that a motorcycle with a bent license plate had given chase, the police began to suspect that appellant was involved in both the September 14 and May 2, 2013,

3

incidents.[2] Officers Thompson and Taylor thus decided to visit appellant's residence, which was about a half mile away. When they arrived, they found appellant's motorcycle, a Yamaha with a bent license plate, still warm. In addition, the license plate number matched the description reported earlier by Officer Thompson.[3]

The officers found appellant in the yard of his residence with his girlfriend, Deanna Jutras. Officer Thompson identified the Yamaha as the motorcycle he pursued and Jutras as the motorcycle passenger, but could not identify appellant as the driver because he had not been able to get a good look during the pursuit. After conducting a lawful search, the officers found on appellant's person a glass methamphetamine pipe and in the surrounding area other glass pipes, syringes and 0.45 grams of methamphetamine.

At trial, Jutras testified under immunity that she was the passenger on appellant's motorcycle when he took off from police on September 14, 2013. She also admitted being a methamphetamine user, but denied having the financial means to purchase 1.90 grams. Rather, she generally could only afford to buy "quarter grams."

On November 26, 2013, the jury found appellant guilty of all counts. In a bifurcated bench trial, the court found true the on-bail and prior conviction enhancements, as well as the prior Strike offense.[4] The court then sentenced appellant to a total term of seven years and eight months for the felony counts and the on-bail enhancement. In addition, with respect to the misdemeanor counts, three and seven, the

---

**2**    Officer Taylor was on duty on both May 2, 2013 and September 14, 2013, and suggested to Officer Thompson, based on the similarities of the two instances, that appellant may be the unidentified motorcyclist.

**3**    Officer Taylor believed this motorcycle appeared different from the one he pursued in May 2013 (although, like the other one, this motorcycle had a bent license plate). Officer Taylor could not be certain appellant was the motorcyclist pursued by Officer Thompson.

4    Appellant's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 490, was granted prior to sentencing, with the result that the court's prior "Strike" finding was dismissed.

trial court sentenced appellant to 72 days in county jail with credit for 72 days. This timely appeal followed.

## DISCUSSION

Appellant raises the following legal issues for our consideration. First, appellant contends the trial court prejudicially erred by admitting evidence relating to his prior arrest for weapons possession pursuant to Evidence Code section 1101, subdivision (b) (hereinafter, section 1101(b)). Second, he contends the trial court erred by not applying section 654 to stay imposition of the 72-day sentence for count three, misdemeanor driving with a suspended or revoked license. We address each issue in turn.

## I. Was Admission of Evidence Pursuant to Section 1101(b) an Abuse of Discretion?

Appellant challenges the trial court's admission, on the prosecution's motion, of evidence that, in 2012, he was arrested for possessing three knives, one of which was a switchblade with a three-inch blade similar to the knife he was found in possession of in this case in count two. The following legal principles apply.

Generally, all relevant evidence is admissible if it "would assist the tier of fact." (*People v. Champion* (1995) 9 Cal.4th 879, 922, 925; Evid. Code, § 801.) Relevant evidence is that which has any tendency in reason to prove or disprove any disputed fact material to the outcome of the case. (Evid. Code, § 210.) "The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations] but lacks discretion to admit irrelevant evidence. [Citations.]' [Citation.]" (*People v. Hamilton* (2009) 45 Cal.4th 863, 940.) Moreover, even relevant evidence may be excluded if the trial court finds that its probative value is substantially outweighed by its prejudicial effect. (*People v. Champion, supra,* 9 Cal.4th at p. 922; Evid. Code, § 352.)

Our legislature has determined that the balance between probative value and prejudice weighs against admission of evidence of a defendant's prior criminal acts unless such evidence is admitted only for certain limited purposes, such as to prove state

5

of mind, opportunity, or identity.[5] (§ 1101(b).) In our case, the trial court admitted the challenged evidence as relevant to prove appellant's state of mind. Specifically, the court accepted the prosecution's argument in moving to admit the evidence that it would tend to prove appellant knew what a switchblade was and that, once unlocked, it could be used as a stabbing instrument.

As appellant admits, knowledge is indeed an element the prosecution must prove to secure a defendant's conviction for possession of a concealed dirk or dagger under section 21310. (See *People v. Rubalcava* (2000) 23 Cal.4th 322, 332 ["to commit the offense, a defendant must . . . have the requisite *guilty mind*: that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' (§ 12020, subds. (a), (c)(24) [the predecessor to § 21310])"].) Nonetheless, appellant, who did not object to admission of this evidence below, now contends it should have been excluded under Evidence Code section 352 because its probative value was substantially outweighed by its prejudicial impact. In particular, he contends that the evidence "upgraded [his] profile – as a potentially dangerous person – in the jury's eyes exponentially," and that the "knowledge element" of section 21310 could have been easily established by stipulation or by brief testimony from the officer involved in the prior incident that he possessed a similar knife (without mention that he was arrested in possession of three knives).

On appeal, we review the trial court's decision to admit evidence solely for abuse of discretion. (*People v. Brown* (2003) 31 Cal.4th 518, 547; *People v. Avitia* (2005) 127 Cal.App.4th 185, 193.) As such, we must not disturb the trial court's ruling "in the absence of a showing it exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice. [Citation.]" (*People v. Avitia, supra,* 127 Cal.App.4th at p. 193. See also *People v. Dyer* (1988) 45 Cal.3d 26, 73.)

Here, before reaching the merits, we address appellant's admitted failure to object at trial to the evidence of his prior arrest on the ground asserted here ─ to wit, that the

---

[5] The admissibility of a defendant's prior sexual acts is the subject of different statutory rules. (See Evid. Code, § 1108.)

probative value of the evidence was substantially outweighed by its risk of undue prejudice. Failure to object to evidence on the stated ground generally forfeits the issue on appeal. (Evid. Code, § 353, subd. (a).) In this case, not only did defense counsel fail to object on the stated ground, he expressly confirmed to the trial court that he was *not objecting* to the evidence, explaining: "My understanding is that the district attorney is trying to use [the evidence] to show that [appellant] has a familiarity with that particular weapon that was found – that is charged in this case. I have looked at the weapon from the previous case. It appears to be almost identical." Given this record, it is quite clear that appellant failed to preserve any claim of error under section 352 with respect to the trial court's admission of this evidence. (See *People v. Champion, supra,* 9 Cal.4th at p. 913; *People v. Kipp* (1994) 26 Cal.4th 1100, 1124.)

Moreover, even if the claim of error had been preserved for appeal, we would nonetheless reject it on the merits. First, as made clear in defense counsel's own statements when declining to object to admission of this evidence, the knife for which appellant was previously arrested "appears to be almost identical" to the knife at issue in this case. As such, the trial court could reasonably accept the prosecution's argument that the evidence was admissible to prove appellant's knowledge or intent that the switchblade he carried was instantly transformable into a stabbing weapon for purposes of the section 21310 charge.

Second, even accepting appellant's contention that the inflammatory impact of this evidence was unnecessarily increased by the fact that his prior arrest involved three knives, only one of which was similar, we nonetheless disagree that the probative value of the evidence was substantially outweighed by the risk of undue prejudice. In addition to the similarity of the switchblades possessed by appellant, both his current and prior offenses were non-violent in nature and occurred within a relatively short period of time. Moreover, the presentation of evidence relating to the prior offense did not consume an undue amount of the jury's time. (See *People v. Kipp, supra,* 26 Cal.4th at p. 1124.) And finally, even assuming for the sake of argument there was some undue prejudice

7

arising from admission of this evidence, the trial court's jury instruction properly restricted the jury's consideration of it:

"The People presented evidence of other behavior by the defendant that was not charged in the case -- in this case that the defendant was in possession of a switchblade knife on a separate occasion, on August 22nd, 2012, in Foster City. You may consider this evidence only if the People have proved, by a preponderance of the evidence, that the defendant, in fact, committed the uncharged offenses or acts. [¶] . . . [¶]

"A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  If the People have not met this burden, you must disregard this evidence entirely.  If you decide that the defendant committed the uncharged offense or act, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant knew what a switchblade was when he allegedly acted in this case and that the defendant's alleged actions were not the result of mistake or accident.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and acts and the charged offenses.  Do not consider this evidence for any other purpose except the limited purpose of whether the defendant had the requisite knowledge and his act was not by accident.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit a crime. If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove the defendant is guilty of Count 2. The People must still prove each charge beyond a reasonable doubt."

As the law requires, we presume the jury properly followed these by-all-means clear instructions when considering the challenged evidence.  (E.g., *People v. Cruz* (2001) 93 Cal.App.4th 69, 73.)  Accordingly, for the reasons stated, we affirm the trial court's exercise of its broad discretion to admit the evidence of appellant's prior knife possession pursuant to Evidence Code sections 1101(b) and 352.  Simply put, appellant's forfeiture of this issue notwithstanding, "[t]he trial court could reasonably conclude, in

8

the exercise of its broad discretion, that this testimony would not so inflame the jurors' emotions as to interfere with their fair and dispassionate assessment of the evidence of defendant's guilt." (*People v. Kipp, supra,* 26 Cal.4th at p. 1124.)

## II. Should the Sentence for Count Three (a Misdemeanor) Have Been Stayed?

Appellant's remaining argument is that the trial court erred by not staying the 72-day sentence imposed for count three, misdemeanor driving with a suspended or revoked license (Veh. Code § 14601.1, subd. (a)), pursuant to section 654. Instead, the trial court sentenced him to 72 days on count three, while simultaneously giving him credit for 72 days in custody. Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654.) Further, as the California Supreme Court recently clarified, where "different provisions of law punish in different ways [a] defendant's single act, . . . section 654's plain language prohibits punishment for more than one of those crimes." (*People v. Jones* (2012) 54 Cal.4th 350, 352.)

Here, the prosecution concedes appellant's 72-day sentence for count three should have been stayed pursuant to section 654. As the prosecution explains, under section 654, "appellant cannot be separately punished for both evading police on his motorcycle and simultaneously driving the motorcycle on a suspended license. There is no evidence in our record that appellant was observed driving the motorcycle at any other point in time after his license had been suspended, and, therefore, he is entitled to the 72 days of total credits." We agree with this reasoning. (Accord *People v. Jones, supra*, 54 Cal.4th at pp. 359-360 [section 654 precludes punishing the defendant separately for the crimes of possession of a firearm by a felon, carrying a readily-accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public].)

Accordingly, we agree with the parties that the sentence imposed for count three must be stayed, and the 72 days of credits restored to appellant. (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13 ["the appellate court can correct a legal error resulting in an unauthorized sentence (including a misapplication of § 654) at any time"].)

9

## DISPOSITION

The trial court is directed to modify the abstract of judgment to stay the sentence for count three under section 654 and restore the 72 days of credit to appellant. The trial court is further directed to send a certified copy of the modified abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____
Jenkins, J.

We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.